HERMAN LASKIN, Appellant, v. JAMIS LEE and Wong Wee, Doing Business under the Name and Style of American Cafe, Respondent.

(196 N. W. 505.)

**Appeal and error — evidence insufficient to establish fraudulent concealment as to terms of lease.**

In an action upon a lease for rent, where defenses of fraud and rescission are involved, it is *held*, for reasons stated in the opinion, that the evidence is insufficient to support the jury's findings of fraud, but, upon the facts and circumstances presented, it is proper to grant a new trial so as to give an opportunity for establishing fraud or fraudulent concealment of the lessor, if any existed.

Opinion filed December 8, 1923.

Appeal and Error, 4 C. J. § 3240 p. 1200 n. 32. Landlord and Tenant, 36 C. J. § 1352 p. 446 n. 47.

In District Court, Burleigh County, *Coffey, J.*

Action to recover rent due upon a lease.

From a judgment in defendant's favor and from an order denying judgment non obstante, or, in the alternative, for a new trial, plaintiff has appealed.

Reversed and new trial granted.

*O'Hare & Cox,* for appellant.

*W. L. Smith,* for respondent.

PER CURIAM. This is an action against two Chinamen to recover rent due upon a lease. Only one of the Chinamen was served. He answered alleging that his signature was obtained by fraud and that there was want or failure of consideration. Further, that defendant is unable to read the English language and speaks and understands such language imperfectly; that he signed the lease without knowing the contents thereof, pursuant to plaintiff's directions, and upon his statements and representations made as to its contents; that plaintiff fraudulently and for the purpose of inducing him to sign the lease did not inform him concerning provisions of the lease to the effect that the lessee could not make any alterations or changes without the lessor's consent and, further, that lessor informed him that the lease provided that plaintiff should make the alterations and put in heating apparatus so that the same would be suitable for use as a restaurant; that defendant relied upon representations and was induced to sign the lease so relying; that plaintiff neglected and refused to put the building in condition so that it could be used as a restaurant and refused to allow the defendant so to do. Defendant prayed for dismissal and requested judgment against plaintiff for rent paid. Upon trial to a jury a verdict was returned in defendants' favor for $53.66. Thereafter plaintiff moved for judgment non obstante or, in the alternative, for a new trial. From the order of the trial court denying this motion and from the judgment the plaintiff has appealed.

The facts are: Plaintiff was a business man in the city of Bismarck who owned a brick block wherein was located a vacant storeroom that was the subject of the lease herein. The defendants, Wong Wee and Jamis Lee, were Chinamen engaged in restaurant business conducting a cafe known as the American Cafe near this brick block; they spoke

and understood the English language imperfectly and read it not at all. Negotiations were had between the parties for the renting of this storeroom for restaurant purposes. An attorney representing the Chinamen interviewed the lessor. The lessor informed him that this vacant storeroom was for rent and that others were negotiating for it. Later, these Chinamen saw the lessor and he agreed to rent the building to them for two years at a monthly rental of $150. Their attorney was out of town at the time and they wanted lessor to wait until he returned so that he could draw a lease. The lessor refused to do this. Then the lessor produced a lease. Apparently, the lease was read. Then it was signed by the Chinamen and acknowledged before a justice of the peace who wrote in above their names "American Cafe by." This lease provided, in its terms, for a rental of $150 per month payable in advance, beginning on the date when the building was occupied, for a term of two years after September 3d, 1921. It provided that the lessee should make no alterations, additions or changes in or about the building or in any manner deface or damage the same without the consent of the lessor thereto in writing; that the premises demised were for use as a restaurant and for no other use or purpose whatsoever. It required the lessees to keep the premises in good repair, external and internal, reasonable wear and tear alone excepted. It provided that the lessees agreed to accept the premises as they found them on the date of their entry thereon. It stipulated that the lessees agreed to accept the premises subject to the right of the lessor to sell such premises and by such sale to terminate and cancel the lease. It provided further that the lessees agreed to permit the lessor to remodel or improve or rebuild the premises and that such remodeling, improvement, or rebuilding should not in any manner release the lessees' obligations to perform the covenants thereof. The lease demised to the lessees a storeroom, namely, the third room north of the corner of the building, situated on lots 17, 18, etc. This building in which this storeroom was located had been constructed a few months previous to the lease. In this building the plaintiff conducted a store, in a corner room, was interested in the operation of a stationery store in the room next and the vacant storeroom leased was next adjacent. This vacant storeroom consisted of one room about 22 feet by 50 feet with a rear door and a front door. At the time it was not piped with radiators for steam heat

although the corner room and the stationery room were so provided. He put radiators and steam heat in this storeroom after this action was commenced and after plaintiff had re-leased this room to his brother. This action was started, and the re-leasing to his brother was, in May, 1922, and the steam heat was installed in the fall of 1922. The key to the leased premises was turned over the lessees. They entered the premises and looked the same over and made certain measurements but never occupied the same. The Chinamen tried to make some arrangements so that an addition or alterations could be made so that the premises might be used for a restaurant but satisfactory arrangements could not be made. They paid the rent of $150 per month for five months then they served written notice upon the lessor purporting to rescind the lease for the reason that there was failure of consideration and because they had been induced to enter into the lease through fraud of the lessor. Then the lessor notified the Chinamen that he would not consent to a rescission; that if they could find a tenant satisfactory to him to whom to sublet they might do so; and that, if they did not, he, as their agent, would attempt to find a tenant in order to mitigate damages. Subsequently, he did lease the premises to another. First at $55 per month, then at $100 per month, to his brother. At the time of the trial Lee, the other defendant Chinaman, who was not served, had left and his whereabouts was unknown. There is some testimony in the record to the effect that the attorney for the Chinamen saw the lessor about renting this room for a restaurant. This attorney went away for some time and when he returned he saw the lessor for the Chinamen concerning doing certain things upon the premises so that they could there establish a restaurant business. The Chinamen required a place to cook. They wanted certain changes to be made. The lessor refused to allow these changes to be made. If any kitchen was put on the rear he wanted the work done by himself, the lessor. He wanted it done at the expense of the lessees and wanted it so constructed that the addition would be uniform with the main building. The evidence in the record is very fragmentary, not disclosing any affirmative representations by way of oral statements or oral representations made by the lessors concerning the lease or the refitting or fitness of the premises for restaurant purposes. We are of the opinion, upon this record, that the evidence is insufficient to support the findings of the

jury of fraud by the lessor as alleged. However, we are not satisfied that upon all of the facts and circumstances as presented, defendant, upon another trial, may not be able to present evidence in defense sufficient to form a question of fact for the jury of fraud and misrepresentations by the lessor in securing this lease and concerning the adaptability of the premises, pursuant to the lease for use as a restaurant as stipulated by the lease.

Upon general considerations as disclosed by the record it must first be considered that the plaintiff, a business man, acquainted with the English language, American laws and customs, occupied a very superior position in comparison with the defendants. These Chinamen imperfectly understood the English language, could not read English, and very evidently were for the most part unacquainted with American laws or customs. The opportunity was presented for overreaching and unconscionable conduct towards these Chinamen by the lessor under the circumstances. In a spirit of fair play and of making a contract where the minds of the parties might mutually meet upon the terms thereof, it was particularly essential, under the circumstances, that the lessor communicate fully to the lessee the terms and provisions of this lease, stipulated in the English language which the lessees did not understand and concerning which their knowledge was limited. The lease and surrounding circumstances disclose a situation that may be capable of proof of fraudulent and unconscionable conduct. The lessor knew that this vacant storeroom was to be used for restaurant business and in fact the lease required and stipulated that it should be used for no other purpose whatsoever. The very nature of this business, as contemplated by these Chinamen, concerned continuity of business for some length and period of time. Nevertheless, the lease, by its very terms provided that the lease existing today might be cancelled tomorrow by the sole act of the lessor through sale of the premises. It provided, further, that no single alteration of any kind could be made in or concerning this vacant storeroom without the consent of the lessor and nowhere is it disclosed that the lessor gave consent to these Chinamen to make one single alteration that might be or was necessary in order to start therein and carry on a restaurant business. It must be understood that this vacant storeroom was just simply one bare room without heat and without partitions of any kind. Although, by the

execution of this lease, the lessor made no implied warranty of fitness or adaptability of the premises for the use as a restaurant and although the lessee took the risk of the quality of the premises for use as a restaurant, nevertheless, these Chinamen, by the particular understanding and agreement of the parties leasing these premises for the sole purpose of conducting a restaurant were entitled to use the premises for that purpose; they were entitled, under the circumstances, to rely upon the good faith and fair conduct of the lessor in consummating and making this lease and for the absence of any fraudulent conduct or fraudulent concealment by him so that fairly and properly, pursuant to the terms of the lease, they might in fact use the storeroom lease for a restaurant business. All manner of fraud is abhorrent to the law. If, upon the facts, the lessor was guilty of such bad faith and unconscionable conduct as to amount to fraud or fraudulent concealment in procuring the execution of this lease and in preventing, by his representations or conduct, these Chinamen from using the leased premises at the very inception of the lease for restaurant purposes, the lease should, and in equity ought to be, subject to rescission. See Underhill, Land. & T. § 309, p. 475; note in 4 A.L.R. 1455; Haines v. Downey, 86 Ill. App. 373. Of course, fraud may not be presumed. It must be established by a preponderance of the evidence, taking into consideration the usual presumption of innocence and fair-dealing. Steinbach v. Banclair, 38 N. D. 233, 164 N. W. 672; Roknsek v. National Union F. Ins. Co. ante, 123, 195 N. W. 300. In this record the facts and circumstances concerning the execution of this lease and concerning the acts performed and representations made prior to, or at the time of, entry by the Chinamen upon these premises is in a very fragmentary form. Apparently, it was very difficult for the Chinamen who testified to understand the questions or to give, in English, any clear expression of his answers or understanding. He should be afforded an opportunity through an interpreter, or otherwise, of fully explaining his testimony. Accordingly, it is our opinion that the judgment should be reversed and a new trial granted with costs to abide the event. It is so ordered.

BRONSON, Ch. J., CHRISTIANSON, JOHNSON, BIRDZELL, and NUESSLE, JJ., concur.